## Case No. 7,789.

### KING v. FEARSON.

[3 Cranch, C. C. 255.][1]

Circuit Court, District of Columbia. Dec. Term, 1827.

#### TROVER.

Trover against the owner, will not lie by a bailiff who distrains goods for rent, and leaves them on the premises of the owner, who takes them away.

Trover for cord-wood, which had been distrained by the plaintiff [Edward B. King], as bailiff of the Bank of Columbia, for rent due to the bank, and left upon the premises, namely, on the defendant's wharf, and removed by the defendant [Samuel S. Fearson].

Upon the trial at May term, 1827, R. P. Dunlop, for the defendant, objected that trover would not lie against the general owner, by a bailiff who has distrained the goods for rent; and cited 2 Wheat. Selw. N. P. 1055. The bailiff has no property in the goods or such right of possession as will maintain trover against the general owner. Bradb. Dis. 1, 13, 223.

J. Dunlop, contra, that the right of possession was sufficient to maintain trover, cited 2 Saund. 47, note a; Cross v. Glode, 2 Esp. 575.

THE COURT with some hesitation overruled the objection, but intimated that if the verdict should be against the defendant, they would hear a motion for a new trial.

Verdict for the plaintiff, $75.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Upon the motion for a new trial, R. P. Dunlop cited 6 Bac. Abr. tit. "Trover," E; Starkie, Ev. pt. 4, p. 1482.

J. Dunlop, contra, cited Wilbraham v. Snow, 1 Vent. 52.

====

## Case No. 7,790.

### KING v. FEARSON.

[3 Cranch, C. C. 435.][1]

Circuit Court, District of Columbia. May Term, 1829.

#### WITNESS—WHEN ALLOWED TO AFFIRM.

1. Before a witness can be admitted to testify upon affirmation instead of an oath, the court must be satisfied that he is one of a society who profess to be conscientiously scrupulous of taking an oath.

2. If the witness is considered by the Society of Quakers as a member of that society in principle and religious profession, and usually meets with them for religious worship, and has applied to be admitted to a full participation of all the civil privileges and the moral discipline of the society, he may be permitted to testify upon solemn affirmation instead of an oath.

Assumpsit for use and occupation.

Mr. Daniel Kurtz, being offered as a witness, upon his solemn affirmation, stated that he agrees in principles with the Society of Quakers; has applied to be admitted as a member of the Society of Friends, who have the matter under consideration; and that he done all in his power to be admitted.

Mr. Coxe, for defendant, objects, that the witness is not within the words of the act of Maryland of 1797 (chapter 118), nor of the bill of rights (section 36). He is not "one of the people called Quakers."

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Lear and Mr. Dunlop, contra. The witness is within the spirit of the constitution of Maryland, and of the act of 1797.

Mr. Coxe in reply. This court, in the case of the Bank of Columbia v. Wright [Case No. 883), at December term, 1827, decided that they were bound by the decisions of the Maryland courts upon this subject; and that the witness must be one of a society who profess to be conscientiously scrupulous of taking an oath.

The question is, is he a member of the Society of Quakers?

THE COURT (CRANCH, Chief Judge, contra) refused to permit Mr. Kurtz to testify, unless upon oath.

THRUSTON and MORSELL, Circuit Judges, were understood to be of opinion that an affirmation, instead of an oath, cannot be admitted, unless the witness be a member of the society according to its rules—an acknowledged member.

Doctor Litle, a Quaker, being affirmed, stated that Mr. Kurtz was considered as a member of the Society of Friends, in principle and religious profession; usually met with them for religious worship, and would not be excluded from their meetings for discipline; has applied to be admitted to a full participation of all the civil privileges and the moral discipline of the society; and has no reason to doubt that he will be admitted, no objection having been made. But the subject is pending before the society; and he is not yet considered as a member in regard to civil privileges and moral discipline.

Upon this evidence THE COURT (nem. con.) permitted Mr. Kurtz to testify upon his solemn affirmation.

CRANCH, Chief Judge, was of opinion that the constitution of Maryland ought to have a liberal construction. That the professed object of the provision was to prevent oppression upon the consciences of men; and that the three cases of Quakers, Tunkers, and Menonists, were rather put by way of example, than as confining the privilege to those sects only, and leaving all other cases of conscience to the severe operation of the law. That every other case of really conscientious scruples was within the meaning of the law; the only question being as to the fact of conscientious scruples, or the membership of the witness in relation to his religious scruples; and not in relation to the discipline or civil privileges attached to membership. So that a member of a society, in regard to its religious persuasion upon the point of the unlawfulness of oaths, was within the protection of the constitution, although he should not be a member as to its civil privileges according to the rules of the society, nor subject to its moral discipline.

NOTE. By the 33d section of the declaration of rights affixed to the constitution of Maryland, it is declared that "no person ought, by any law, to be molested in his person or estate, on account of his religious persuasion or profession, or for his religious practice, unless under color of religion any man shall disturb the good order, peace, and safety of the state," &c. Quaere, is not a law which disqualifies a man to be a witness or juror, or to obtain an attachment, or injunction, or security of the peace, &c. on account of his religious persuasions or profession, in contravention of this section of the declaration of rights? The 36th section declares, "that the manner of administering an oath to any person ought to be such as those of the religious persuasion, profession, or denomination, of which such person is one, generally esteem the most effectual confirmation, by the attestation of the Divine Being. And that the people called Quakers, those called Tunkers, and those called Menonists, holding it unlawful to take an oath on any occasion, ought to be allowed to make their solemn affirmation, in the manner that Quakers have been heretofore allowed," &c. "and further that on such affirmation, warrants to search for stolen goods, or the apprehension or commitment of offenders, ought to be granted, or security for the peace awarded; and Quakers, Tunkers, and Menonists ought also, on their solemn affirmation as aforesaid, to be admitted as witnesses in all criminal cases not capital." See also the act of 1797, (chapter 118), "to alter such parts of the declaration of rights, the constitution and form of government, as prevent persons conscientiously scrupulous of taking an oath from being witnesses in all cases;" which recites: "Whereas persons conscientiously scrupulous of taking an oath, labor under many and great inconveniences, owing to their not being admitted to make their solemn affirmation as witnesses in all cases, instead of an oath: Therefore it is enacted, &c., that the people called Quakers, those called Nicolites, or New Quakers, those called Tunkers, and those called Menonists, holding it unlawful to take an oath on any occasion, shall be allowed to make solemn affirmation as witnesses, in the manner," &c., which "shall be of the same avail as an oath to all intents and purposes whatever." And by the 3d section it it enacted, "that before any of the persons aforesaid shall be admitted as a witness in any court of justice in this state, the court shall be satisfied by such testimony as they may require that such person is one of those who profess to be conscientiously scrupulous of taking an oath."